**Raymond and Bonnie BAXTER, as parent and next friend of Paul Baxter, a minor, Plaintiffs,**

v.

**The ROUND LAKE AREA SCHOOLS, Community Unit School District # 116, and Mary L. Davis, Superintendent of Round Lake Area Schools in both her personal and professional capacity, Defendants.**

No. 93 C 6864.

United States District Court,
N.D. Illinois,
Eastern Division.

June 7, 1994.

**439**

*MEMORANDUM OPINION
AND ORDER*

HOLDERMAN, District Judge:

Plaintiffs Raymond and Bonnie Baxter, as parents of Paul Baxter, a fifteen year old, have brought this action against defendants The Round Lake Area Schools and Superintendent Mary Davis pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343, alleging that defendants have violated Paul Baxter's procedural and substantive due process rights under the Fourteenth Amendment by employing unfair procedures in Paul Baxter's suspension and expulsion hearings from Round Lake High School. In addition, plaintiffs claim that defendants have violated section 10–22.6 of the Illinois School Code, 105 ILCS 5/10–22.6, Ill.Rev.Stat. ch. 122, para. 10–22.6, by not providing plaintiffs with proper notice of his suspension and expulsion hearings.

In an earlier opinion in this case, *Baxter v. The Round Lake Area Schools,* No. 93 C 6864, 1993 WL 478994, 1993 U.S.Dist. LEXIS 16396 (N.D.Ill. Nov. 17, 1993), this court denied plaintiffs' motion for a temporary restraining order. Both defendants have now filed motions to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a valid claim upon which relief may be granted. After reviewing the materials filed in connection with defendants' motions to dismiss, this court determined in an order dated May 3, 1994, that because both parties have submitted materials outside the pleadings, defendants' motions to dismiss should be treated as motions for summary judgment under Federal Rule of Civil Procedure 56.[1] For the reasons stated below, defendants' motions to dismiss considered as motions for summary judgment are granted.

*BACKGROUND*

On September 23, 1993, Paul Baxter was involved in an altercation with another student in the school building and sustained injuries. Two teachers were also injured in the process of attempting to stop the fight.

Deborah W. Owens, Hinsdale, IL, for plaintiffs.

Junie L. Sinson, Robert W. Trevarthen, Karl Raymond Ottosen, Ottosen, Sinson & Trevarthen, Ltd., Wheaton, IL, for defendants.

1. The court also ordered all parties to submit statements of uncontested material facts pursu-

ant to Local Rules 12(m) and 12(n).

Eventually, a third teacher pulled Paul from the fight and escorted him to the principal's office to be questioned about what occurred.

A school dean, Mr. Bending,[2] spoke with both students involved in the fight and with the teachers who tried to stop it.[3] The dean called Paul's father and asked him to come to the school to discuss his son's situation. The dean also called the police, apparently due to the serious nature of the altercation and the injuries involved. Paul was questioned for a second time by both the dean and the police. The dean decided to suspend Paul from school for 10 days beginning September 23, 1993. Paul and his father were given a copy of behavior report filed by the dean after the meeting. The report clearly states that Paul is suspended from school for 10 days and that the administration requests a conference with Paul's parents on September 27, 1993, to further discuss their son's situation. On the back of the behavior report is a statement regarding the rights of the parents of a suspended student under Illinois law. This statement clearly notified Paul's parents of their right of review of Paul's suspension with an appointed hearing officer.

On September 27, 1993, the school held a suspension hearing for Paul. That hearing was conducted by a school-appointed hearing officer. As stated above, the school provided Raymond Baxter, Paul's father, with written and oral notice of this hearing at the meeting with the school's dean just following Paul's fight on September 23rd. Paul and his mother attended the September 27th hearing at which Paul was asked to relay his version of the September 23rd altercation. Also in attendance at the September 27th hearing were Mr. Bending, the dean, and Mr. James Briscoe, the school principal.

At the September 27th hearing, Paul was provided the opportunity to tell the hearing officer his version of the events which led to the fight and to explain what happened when the teachers tried to stop the fight. The principal then read the teachers' reports describing the event. The hearing officer decided to uphold Paul's ten-day suspension and to recommended that the school transfer Paul to an alternative educational facility for the remainder of the semester or begin the expulsion process. The hearing officer in the suspension hearing report stated that the school should wait for Mrs. Baxter's decision regarding whether the school should transfer Paul to the alternative educational facility at the end of Paul's suspension period or begin the expulsion process.[4]

After the conclusion of the ten-day suspension period, because the school had not heard from the Baxters regarding their decision, Mr. James Prault, Round Lake Area Schools' Director of Pupil Services, notified the Baxters in a letter dated October 12, 1993, that Paul's suspension was over on October 7, 1993 and that Paul had been assigned to afternoon session at the alternative educational facility. In addition, the letter stated that Paul's absences from school beginning October 8, 1993 are considered to be unexcused by the school.

On October 13, 1993, the Superintendent of the Round Lake Area Schools, Mary Davis, received a letter from plaintiffs' attorney requesting an appeal of the hearing officer's September 27, 1993 decision regarding Paul's suspension and the hearing officer's recommendations regarding the transfer to the alternative educational facility.

---

2. In their complaint, plaintiffs incorrectly identified Mr. Bending as the principal of the high school. Mr. Bending is a dean of Round Lake High School. Mr. James Briscoe is the principal of the high school. It is clear to this court based on the evidence of record in this case that Paul met with Mr. Bending, a dean at Round Lake High School, after the September 23, 1993 fight.

3. Paul signed a Round Lake High School behavior report stating that he had the opportunity to make his statement to the school administration. See Complaint, Exhibit C.

4. See Exhibit D of plaintiffs' complaint entitled Suspension Hearing Report dated September 27, 1993. At the September 27th suspension hearing, Mr. James Prault, the hearing officer, decided that Paul was guilty of gross misconduct due to his involvement in a fight injuring two teachers. Based on these conclusions, the hearing officer concluded that Paul should be suspended for 10 days beginning September 23, the date of the fight. In addition, the hearing officer decided to uphold the high school's administrative recommendation to either expel Paul or to transfer him to an alternative educational facility for the remainder of the semester.

On October 22, 1993 counsel for the district notified plaintiffs' counsel in writing that the district would proceed with the expulsion process due to plaintiffs' refusal to allow Paul to attend the alternative educational facility. As is required by state statute, the school sent notice by certified mail to the Baxters including the date, time and place of the expulsion hearings, a detailed description of the charges against Paul, and a list of names of witnesses who would testify at the hearing.[5]

The expulsion hearing was held on November 2, 1993. Paul, his parents, and their attorney all attended the expulsion hearing.[6] The tape recording of the hearing provided to the court indicated that the hearing began with the hearing officer asking Paul background questions and introducing the parties in attendance. The witnesses were then placed under oath. Paul was the first to testify to his version of what occurred on September 23rd. The hearing officer asked Paul to describe what happened, but plaintiffs' attorney protested because she stated that she wanted to ask all the questions of her witnesses. Plaintiffs' attorney also stated that she would answer the hearing officer's questions on plaintiffs' behalf. Plaintiffs' attorney then read a statement on Paul's behalf stating that Paul did not realize he was being suspended after the September 23rd meeting with the school dean immediately following the fight. Plaintiffs' attorney also stated that Paul did not realize the September 27th hearing was a suspension

hearing. The hearing officer told plaintiffs' attorney that at that point in the hearing he preferred to first discuss the details surrounding the fight and then they would proceed to discuss the suspension itself and the procedures employed by the school.

The hearing officer attempted to question Paul, through plaintiffs' attorney, about what took place on September 23, 1993. Plaintiffs' attorney refused to answer the hearing officer's questions about the fight itself.[7]

The school district's attorney told Plaintiffs' attorney that she could ask any questions she wished of all the witnesses after the hearing officer asked his questions, and then she could present her own witnesses. The hearing officer originally wanted the school to first present all of their witnesses and then allow plaintiffs' counsel to question them. Plaintiffs' counsel, however, wanted to cross-examine each of the school's witnesses immediately after each witness testified. The hearing officer decided to honor plaintiffs' counsel's wishes in that regard.

Throughout the hearing, both the hearing officer and the school district's attorney attempted to accommodate the requests of plaintiffs' counsel. Plaintiffs' attorney was permitted to extensively question the school personnel regarding the events surrounding the fight. In fact while plaintiffs were at the meeting, plaintiffs' attorney asked the vast majority of the questions asked of all the witnesses.[8]

5. Paul was allowed to attend Round Lake High School from October 25th through November 2nd, 1993, the date of Paul's expulsion hearing.

6. The court requested and was provided a tape recording of the November 2, 1993 expulsion hearing. Plaintiffs allege that the hearing officer did not allow their attorney to ask "many questions" of school personnel and that the school's attorney instructed the school personnel to refrain from answering many of plaintiffs' attorney's questions. *See* plaintiffs' *Complaint*, p. 5, ¶ 25. The court listened to the tape and disagrees with plaintiffs' assessment of the hearing. The court finds that Paul was not denied his due process rights at this hearing. Plaintiffs' counsel questioned the witnesses and presented plaintiffs' version of the events surrounding the fight for almost an hour and was accorded the opportunity to question witnesses further but plaintiffs' counsel and plaintiffs voluntarily left the hearing.

7. The hearing officer asked, "Was there a fight?" Plaintiffs' attorney responded, "Do you have the next question." The hearing officer then asked Paul through plaintiffs' attorney, "Were you suspended for ten days?" Plaintiffs' attorney responded, "We have already answered that question." Because plaintiffs' attorney was not cooperating with the hearing officer, the school district's attorney suggested that the hearing officer question the school personnel about what occurred.

8. Plaintiffs were at the hearing for about one hour and fifteen minutes. Plaintiffs' attorney questioned the witnesses and described plaintiffs' version of the events surrounding the fight for almost one hour.

At the November 2, 1993 hearing, after Paul provided information to the hearing officer, the next witness to testify was the school dean, Mr. Bending. The hearing officer asked Mr. Bending to describe his version of what occurred on September 23, 1993. Mr. Bending proceeded to testify, in detail, about the fight itself and about the procedures the school followed after the fight. Plaintiffs' attorney then extensively questioned the dean about the fight, the school's disciplinary procedures and the meeting the dean had with Paul and his father just following the fight. Plaintiffs' attorney was argumentative throughout her questioning and often made comments regarding the dean's testimony. The school district's attorney asked plaintiffs' attorney and the witness not to argue but he did not forbid plaintiffs' attorney from questioning Mr. Bending.

After plaintiffs' attorney stated that she was finished questioning the dean, Mrs. Bauer, one of the teachers who attempted to stop the fight, described her version of what occurred on September 23rd. Plaintiffs' attorney then extensively questioned Mrs. Bauer about what she saw and how she was injured. Plaintiffs' counsel also argued with this witness. During the course of plaintiffs' counsel's questioning of the teacher, the school district's attorney and the hearing officer asked the teacher questions to clarify the teacher's testimony. Plaintiffs' attorney protested about the interruption of her cross-examination. The hearing officer stated that this is not a trial but a fact-finding hearing and that all sides may ask questions to discover the truth. Because plaintiffs and their attorney viewed the hearing procedures as being improper, they chose to leave the November 2nd expulsion hearing before it was completed.[9] The hearing continued without them and other witnesses testified to the hearing officer regarding the events surrounding the September 23rd fight.

Based on the evidence presented at the expulsion hearing, the hearing officer recommended to the Round Lake Board of Education that Paul Baxter should be expelled if he did not attend the alternative school for the remainder of the semester.[10]

The Board of Education met on November 9, 1993 to consider Paul Baxter's expulsion and the recommendations of the hearing officer. Plaintiffs and their attorney received written notice of the date, time and place of the meeting. Paul, his parents, and their attorney all attended the Board meeting. According the minutes of the Board meeting, plaintiffs' attorney was given an opportunity to make a presentation on Paul's behalf. In addition, both Paul and his parents made presentations to the Board. The high school principal then recommended that Paul be expelled for gross misconduct. The Board, Superintendent Davis, and the school district's counsel deliberated in a closed session regarding Paul's expulsion. The School Board decided that Paul should be placed in the alternative educational facility for the remainder of the semester effective immediately.

Plaintiffs argue that Paul was denied his due process rights during the November 2nd expulsion hearing, because the hearing officer refused to provide plaintiffs with a court reporter; the hearing officer refused to allow their attorney to ask many questions of the school personnel at Paul's expulsion hearing; and the hearing officer was not independent and impartial. In addition, plaintiffs argue that the school failed to adequately notify plaintiffs about the September 27th suspension hearing, and failed to provide proper notice of their appeal rights. In addition, plaintiffs claim that under Illinois law only a district's Board of Education, not a hearing officer, is allowed to preside over a student's expulsion hearing.

### ANALYSIS

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interroga-

9. Before plaintiffs and their attorney left the hearing room, counsel for the school district informed them that the district would complete the hearing and that they were welcome to stay to further question the district's witnesses.

10. The hearing officer prepared a summary of the evidence from the November 2nd expulsion hearing and submitted copies to both the Board of Education and plaintiffs' counsel.

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. However, when a party bears the burden of proof on an issue, that party may not simply rest on its pleadings, but must affirmatively demonstrate with specific factual allegations that a genuine issue of material fact exists and requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## I. *Due Process and Suspension*

The United States Supreme Court has addressed the issue of what process is due public school students in the case of a suspension not exceeding ten days. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). However, the Court has specifically left open the question of what due process requires in expulsion cases. The Court stated in *Goss v. Lopez,* "We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding ten days. Longer suspensions or expulsion for the remainder of the school term, or permanently, may require more formal procedures." 419 U.S. at 584, 95 S.Ct. at 741.

In *Goss v. Lopez,* the Supreme Court clearly established that a student's right to a public education is a property interest protected by due process guarantees which cannot be taken away for misconduct without adherence to minimum procedures. *Id.* at 574, 95 S.Ct. at 736. Regarding a suspension of ten days or less, the Court held that due process requires that the student be given oral or written notice of the charges against him, an explanation of the basis for the accusation, and a chance to present his side of the

story. *Id.* at 581, 95 S.Ct. at 740. The Court did not require any type of formal suspension hearing stating that "in the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Id.* *See also, Lamb v. Panhandle Community Unit School Dist. No. 2,* 826 F.2d 526, 528 (7th Cir.1987) (Seventh Circuit stated, following the mandates of *Goss v. Lopez,* that due process did not require the school to conduct a formal suspension hearing, but did require that the student be given an opportunity to present a mitigative argument before being removed from school. *Id.*).

■ Based on the relevant case law, this court finds that defendants did not violate Paul Baxter's due process rights when suspending him from school. On September 23, immediately following the fight, Paul was taken to the dean's office and was given a chance to present his side of the story. Clearly Paul had notice of the charges against him due to the immediate nature of the meeting with the dean. Paul was not suspended until the dean spoke to all the parties involved in the altercation. Due process requires no more of defendants.

■ Plaintiffs also argue that defendants denied Paul his due process in connection with the September 27th suspension hearing. Plaintiffs contend that the school failed to provide plaintiffs with proper notice of the suspension hearing. Plaintiffs claim that the school should have provided them with written notice of the suspension hearing delivered by certified mail.

Under Illinois law, to expel pupils guilty of gross disobedience or misconduct, a school district must request the student's parents to appear at a meeting of the school board or with a hearing officer appointed by the board. Such request must be made by registered mail or certified mail and must state the time, place and purpose of the meeting. 105 ILCS 5/10–22.6, Ill.Rev.Stat. ch. 122, para. 10–22.6.

The September 27th hearing was not an expulsion hearing. At the September 27th hearing the hearing officer could not and was not going to expel Paul. The hearing officer

provided the Baxters with *the option of beginning the expulsion process* (emphasis added). However, this is not the equivalent of ordering an expulsion. Therefore, because the September 27th hearing was not an expulsion hearing, formal written notice by certified mail was not required under Illinois law. In addition, the written notice the school provided on the September 23rd behavior report, as well as the oral notice of the hearing provided by the dean at the September 23rd meeting, were both sufficient to satisfy due process.

## II. *Due Process and Expulsion*

As stated above, the Supreme Court has not addressed what due process requires before a student is expelled from school, except for stating that a more formal procedure than is required for suspension may be necessary. *Goss v. Lopez*, 419 U.S. 565, 583, 95 S.Ct. 729, 741, 42 L.Ed.2d 725 (1975).

■■■■ However, the Seventh Circuit specifically addressed the expulsion issue in two 1972 cases, *Linwood v. Board of Educ. of the City of Peoria*, 463 F.2d 763 (7th Cir.), *cert. denied*, 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972), and *Betts v. Board of Educ. of the City of Chicago*, 466 F.2d 629 (7th Cir.1972).[11] In *Linwood* the Seventh Circuit stated that an expulsion hearing "need not take the form of a judicial or quasi-judicial trial." 463 F.2d at 770. The court held that due process in the context of an expulsion hearing "is not to be equated, as appellant urges, with that essential to a criminal trial or a juvenile court delinquency proceeding." *Id.* The Seventh Circuit rejected the appellant's argument that the student in *Linwood* was entitled to a hearing conducted by a panel of impartial persons other than the district's school board members, stating that what is required under due process is an opportunity to be heard in a meaningful manner. *Id.*[12]

In addition, the Seventh Circuit stated that the written notice provided by the school district stating the time, place and purpose of the expulsion hearing, as required by Illinois statute, was constitutionally adequate. *Id.* at 770.

In *Betts v. Board of Educ. of the City of Chicago*, the Seventh Circuit stated that because plaintiff knew of the charges against her, received notice of the expulsion hearing, and was given a full chance to explain her position in an evidentiary hearing, she was not denied her due process. 466 F.2d 629, 633 (7th Cir.1972). In addition, the court stated that it could not hold that failure of the school to specifically advise plaintiff's mother about the possible consequences of the disciplinary hearing (the possibility of being transferred to a special educational

---

11. Since 1972 the Seventh Circuit has not addressed the issue of what due process requires of a school when conducting an expulsion hearing. However, this court finds that the *Betts* and *Linwood* decisions are consistent with the Supreme Court's 1976 decision in *Goss v. Lopez*. In *Goss*, the Supreme Court refused to address the issue of due process and expulsion hearings stating only that a more formal procedure than is required for a suspension may be necessary. 419 U.S. at 583, 95 S.Ct. at 741. The Seventh Circuit in *Betts* and *Linwood* did require more formal procedures for an expulsion hearing including advance written notice of the hearing; sufficient time to prepare for the hearing; the right to be represented by counsel; and the ability to question witnesses and school personnel in an evidentiary hearing. *See Betts*, 466 F.2d at 633, and *Linwood*, 463 F.2d at 770.

12. *See, Long v. Thornton Township High School Dist. 205*, 82 F.R.D. 186 (N.D.Ill.1979). The plaintiff in *Long*, like the plaintiffs in this case, argued that the hearing officer in this expulsion proceeding was not impartial. The court stated that hearing officers are presumed to be unbiased and that prior involvement in the case is not a violation of plaintiff's due process rights. *Long*, 82 F.R.D. at 192. The court went on to state that to show bias plaintiff must show prejudice by the hearing officer stemming from a source other than knowledge of or prior involvement in the case. *Id. See also, Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 927 (6th Cir.1988). In response to plaintiff's allegations of denial of due process because the principal and superintendent participated in the closed deliberations of the school board that plaintiff and his counsel were not allowed to attend, the Fifth Circuit stated that "not only was it permissible for the school principal and superintendent to participate in the school board's deliberations, it would not have been a denial of due process for them to have voted with the board, or even to have held the pre-expulsion hearing themselves and reached the final, binding decision concerning Newsome's [plaintiff's] expulsion." *Id.*

facility) was a violation of plaintiff's due process rights. *Id.*

■ Based on the facts as plaintiffs present them and on the relevant case law discussed above, this court finds that Paul Baxter was not denied his due process rights in connection with his November 2nd expulsion hearing. Paul Baxter and his parents were given adequate notice of the expulsion hearing and a meaningful opportunity to be heard. Plaintiffs admitted that they received written notice by certified mail of Paul's November 2nd expulsion hearing stating the date, time and place of the hearing as is required under Illinois law. Plaintiffs and their attorney attended the hearing and had adequate time to prepare for it.

Plaintiffs' attorney was given the opportunity to explain Paul's position to the hearing officer and to extensively question the school personnel and those involved in the fight. It was plaintiffs' choice to leave the expulsion hearing before it was concluded.[13] Because plaintiffs chose not to fully participate in the hearing, the testimony before the hearing officer consisted primarily of the school personnel (the dean and the teachers who witnessed the fight and tried to stop it) who described in detail what occurred on September 23rd.

This court finds that plaintiffs cannot prove that the hearing officer's decision was arbitrary and capricious in violation of Paul's due process rights, because the testimony before the hearing officer was a sufficient evidentiary basis to support the his recommendation to expel Paul if he did not attend the alternative educational facility. *See Stratton v. Wenona Community Unit Dist. No. 1,* 133 Ill.2d 413, 551 N.E.2d 640, 649, 141 Ill.Dec. 453, 462 (1990).

■ In addition, this court finds no support for a finding of a denial of due process by virtue of the fact that the same hearing officer from Paul's suspension hearing also presided over Paul's expulsion hearing. Plaintiffs have not shown, as is required to prove a due process violation, that the hearing officer possessed a pre-existing animosity toward Paul or had developed a bias because of the officer's involvement in Paul's case.

■ This court also rejects plaintiff's argument that Paul was denied due process because a court reporter was not present at his expulsion hearing or because the school did not inform plaintiffs of the possibility that Paul could be transferred to an alternate education program. As discussed above, the Seventh Circuit has stated that a school expulsion hearing need not follow the formal procedures of a judicial or quasi-judicial trial to survive due process challenges. In addition, the Seventh Circuit has specifically held that failure of a school to notify a parent of the possible punishments that could result from the expulsion hearing is not a violation of due process. *Betts,* 466 F.2d 629, 633 (7th Cir.1972).

■ Finally, this court rejects plaintiffs' argument that, under Illinois law, the district's School Board, and not an appointed hearing officer, is the only proper party to preside over a student's expulsion hearing. Under Illinois statute, either a school district's Board of Education or a hearing officer appointed by the Board may preside over a pupil's expulsion hearing. 105 ILCS 5/10–22.6(a), Ill.Rev.Stat. ch. 122, para. 10–22.6(a). If a hearing officer presides over the expulsion proceeding, the officer is to then prepare a written summary of the expulsion hearing and a recommendation for the School Board to consider in making the final decision regarding the student's expulsion. *Id.*

In this case defendants complied with the statute. A hearing officer appointed by the School Board presided over Paul's November 2nd expulsion hearing. After conducting an evidentiary hearing, the hearing officer recommended to the School Board, based on the evidence presented to him at the expulsion hearing, that Paul should be transferred to the alternative high school or be expelled from school. The School Board then held a meeting on November 9th to consider the

---

13. *See Stratton v. Wenona Community Unit Dist. No. 1,* 133 Ill.2d 413, 551 N.E.2d 640, 649, 141 Ill.Dec. 453, 462 (1990). In *Stratton,* the Illinois Supreme Court rejected plaintiff's argument that because plaintiff, his parents, and their attorney chose to not participate in the evidentiary portion of plaintiff's expulsion hearing, plaintiff was denied his due process rights. *Id.*

hearing officer's recommendations and to make the final decision regarding Paul's expulsion. Plaintiffs have not sufficiently shown any reason why under the undisputed material facts in this case this statute should not apply to the expulsion hearing in this case.

### CONCLUSION

For the reasons stated above, defendant The Round Lake Area Schools' motion to dismiss considered as a motion for summary judgment is GRANTED, and defendant Superintendent Mary Davis's motion to dismiss considered as a motion for summary judgment is GRANTED. Judgment is entered for defendants. This case is DISMISSED in its entirety.

### RULE 58 JUDGMENT

IT IS ORDERED AND ADJUDGED that defendants' motions to dismiss considered as motions for summary judgment are granted. Judgment is entered in favor of defendants The Round Lake Area Schools, Community Unit School District # 116 and Mary L. Davis, Superintendent of Round Lake Area Schools in both her personal and professional capacity and against plaintiffs Raymond and Bonnie Baxter, as parent and next friend of Paul Baxter, a minor.

Pursuant to Rule 54(b) there being no just reason for delay, this is a final and appealable order.